CHRISTIAN, J.
The main question to be determined in this case is what is the true construction to be given to the first and second sections of the .act approved July 11th, 1870, entitled “an act in relation to mechanic’s liens.” These sections are as follows:
“1. Be it enacted by the general assembly, that all artisans, builders, mechanics, lumber dealers and others, performing labor or furnishing materials for the construction, repair or improvement of any building or other propertjq shall have a lien, as hereinafter provided, upon such property, and so much land therewith, as shall be necessary for the convenient use and enjoyment of the premises, for the work done and materials furnished. But when the claim is for repairs only, no .such lien shall attach upon the propertjr repaired unless such repairs were ordered by the owner of the property or his agent.
2. “A general contractor wishing to avail himself of the lien given him by the preceding section, shall file within thirty days after the completion of the work, in the clerk’s office of the County or Corporation court of the county or corporation in which the property upon which a lien is sought to be secured is *situated, and in the clerk’s office of the chancery court of the city of Richmond when the property is in said city, a true account of the worli done or materials furnished, sworn to by said claimant or his agent, with a statement attached signifying his intention to claim the benefit of said lien, and setting forth a brief description of the property upon which he claims the lien. It shall be the duty of the clerk in whose office such account and statement shall be filed, to record the same in a book kept for that purpose; and from the time of such filing all persons shall be deemed to have notice thereof. ’ ’
We have first to determine the meaning of the words “general contractor,” used in the second section.
In the case before us, the “Masonic Building Association of the city of Norfolk” having determined to erect in that city a large and expensive building for the use of the association, made three separate and distinct contracts with certain builders and mechanics, one with Charles Dashiell for the carpentry or wood work, one with William Rosson for the brick work, and one with Spaulding & Guy for the plumbing and gas fitting, and also employed one Charles B. Cassel as the architect for designing and superintending the building.
It is insisted by the learned counsel for the appellant that none of these are “general contractors,” and that therefore they cannot assert their liens under this act, and that the demurrer to the bill ought to have been-'sustained, and the bill dismissed. He maintains that a “general contractor” is one who contracts for the building of the whole house, that is, every part of it, and that it is only to such a contractor that the lien is directly given, and that when contracts are *made, as in this case, with different mechanics or artisans, for the completion of different parts of-.a building, they can acquire no lien. Such a construction, I think, is too narrow and technical, and would, in the great majority of cases, defeat the very object of the statute. The title of the act is “an act in relation to mechanics’ liens,” and the whole scope and object of the act is to insure to this useful class of laborers the certain, and speedy rewards of their labor, and to prevent the fruits of their daily toil, when matured, from being reaped bj1- others. To confine it to the very small class of “general contractors, ’ ’ in the sense of these words, as construed by the appellant’s counsel, would limit its effect to a decree never intended by the legislature.
The first section indicates the scope of the act, and enumerates those entitled to the lien, viz: “All artisans, builders, mechanics, lumber dealers, and others performing labor, or furnishing materials for the construction, repair or improvement of any building or other property. ’ ’ In this section, enumerating the class who shall be entitled to a lien, the words general contractor are not used; they are used for the first time in the second section. There being no words to limit the applicability of this term “general contractor” to the class enumerated in the first section, any one of them may be a general contractor, the lumber man who furnishes the material, as well as the mechanic who does the work. It is plain that the term “general contractor” is not restricted to the contractor who under *511 takes to complete every part of the work, because the act in terms provides for the man who does no part of the work, but simply furnishes the material. He may be a “general contractor,” for he is one of the enumerated classes. Upon the face of the whole act it is plain that the words ‘‘general contractor” *are used in contradistinction to the word subcontractor. This contradistinction runs through almost every section of the act. The general contractor is required to do certain things, and the sub-contractor is required to do certain other things: the general contractor acquires certain rights in one way, and the sub-contractor in another way. This view is made conclusive by the fact, that in the third and tenth sections the word contractor is used as synonymous with “general contractor,” showing that the word “general” has no specific import, but only is used to make more palpable the distinction between the contractor and sub-contractor. It is obvious, looking to the whole act, that a “general contractor,” in the meaning of the statute, is one who contracts directly with the owner of the property; and whether his contract be to construct a part of the whole of a building, if his contract is made with the owner he is a general contractor, in the meaning of the act. The usual mode of building houses in the cities is not by making one entire contract for the construction of the entire building, but different contracts for different parts: with the carpenter for the wood, with the bricklayer for the brick work, and so on ; and any one of those who contracts directly with the owner is a general contractor, as distinguished from a sub-contractor. Any other construction would violate the very object of the act, in limiting its operation, and would lead to the grossest injustice and the most palpable absurdity. It would be to hold, that though a mechanic should build every part of a house, brick work, wood work, plastering and upholstering, he could acquire no lien, because a grate or gas fixture was put in by another; or, in a contract for repairs, if a painter has painted a whole house, inside and out, *he could not acquire a lien for his work because another man had put on a lock, which was a necessary part of the repairs, and therefore the painter had not completed the whole work of repairs, and was consequently not a ‘‘general contractor.” This would be the absurd consequence of a literal construction of the words “general contractor.”
But it is further argued, in behalf of the appellants, that the appellees have acquired no lien, because the act requires that a party to avail himself of the lien, given by the act, must file within thirty days after the completion of the work, in the clerk’s office, an account of his claim, with a statement signifying his intention to claim the benefit of said lien. He insists that by the terms of the act the work must be completed, and the claim filed within thirty days after completion, to entitle the party to a lien. Now, in this case, the Masonic Building Association failed to comply with their contract, and finally directed a discontinuance of the building, after a large amount in materials and labor had been furnished and expended by the appellees.
If the building was not completed it was no fault of the appellees. They were prevented by the owner from going on to its completion. They had performed their part of their separate contracts. Suppose the controversy was between the appellees and the Masonic Building Association. It is plain, from the whole scope and object of the act, that the mechanics’ lien would attach to the building and the ground upon which it was in process of erection; and the owner could not deprive the contractors of the lien which the law gives, upon the ground that the notice of the lien had not been recorded within thirty days after the completion, when, in point of fact, the completion of the building had been prevented by the owner *himself. This would be to allow a party to take advantage of his own wrong, and to offer a premium for the violation of contracts. How are the rights of the parties changed by the fact that the owner makes a contract with other parties, by which he creates a lien upon the same property to them? It appears in this case that on the 29th June 1871, long after the commencement of the building, the said Masonic Building Association made a deed of trust upon the lot and building to secure a debt of $10,000 to the Merchants and Mechanics Savings Bank of Norfolk (the appellants here) and on the third day of July 1871, made another deed of trust to Charles Sharp, trustee, to secure a debt of $5,000 to Myer Myers. Now, can the right of the mechanic be affected by any contract made by the owner and third parties after the commencement of the building? They were no parties to that contract, and if the owner could not deprive them of their lien because no notice of the lien was filed “thirty days after completion,” because by his own act it was not completed, certainly his grantees, who take only such rights as he had, must hold subject to the rights which the law gives to the mechanics.
The seventh section of the act provides that “the lien created by this act shall be preferred to every other lien or incumbrance which shall have attached upon said property subsequent to the time at which the work was commenced or the materials furnished, and no incumbrance upon the land created after the making of the contract for the erection of a building upon such land, shall operate upon the building erected until the lien in favor of persons doing the work or furnishing materials shall have been satisfied. ’ ’
I think it is plain that the true construction to be 'x'given to the act is this: that it creates a lien in favor of. the class enumerated in the first section, “mechanics, artisans, builders, lumber dealers,” &c., which lien attaches to the prop *512 erty as soon as the work is commenced, which shall be preferred to every other lien or incumbrance made subsequent to that time. If the work be completed according to the contract, then the contractor (whether he be a contractor for a part or for the whole work, provided he makes his contract directly with the owner), in order to avail himself of the lien created by the act, must file within thirty days after the completion of the work, the account and statement required by the statute. This is required only where the work is completed; and the reason is obvious. As long as the work is progressing and incomplete the law gives notice to the world that the mechanic’s lien attaches to the building from the time it is commenced, and which he may enforce by filing within thirty days after its completion the statement and account required by the statute. So that while it is in the course of construction no notice is necessary. After it is completed and delivered to the owner, the mechanic, in order to retain his lien, must, within thirty days, comply with the requirements of the statute. And this is required in order to notify all persons dealing with the owner that the mechanics’ lien, to which the law gives preference, still attaches to the property. If the work is not completed by default of the owner there can be no loss of the lien by that default.
In Philips on Mechanics’ Liens, page 194, the author says: “It is universally true, that no loss of lien is occasioned for the work actually performed in accordance with the contract when the work has been stopped or abandoned in consequence of the default *of the owner.” See also Bushfield v. Wheeler, 14 Allen’s (Mass.) R. 139; Schwartz v. Saunders, 46 Ill. R. 18.
In this case, it seems that the appellees did each file in the clerk’s office of the Corporation court of Norfolk a statement of their respective claims, and their purpose to assert their lien. This was . done no doubt out of abundant caution. It was not necessary to secure their lien. This, as has been seen, is required only in a case where the work has been completed. The lien attaches without such action in a case where the work is not completed by the default of the owner. But having complied with their contracts, and established their just claims by sufficient proof, they are entitled to enforce their liens, which the law affixes to the property, in preference to all other liens or incumbrances which were created subsequent to the commencement of their work on the building.
I am therefore of opinion that the decree of the Corporation court of the city of Norfolk be affirmed.
STAPLES, J.
I am not prepared to go as far as Judge Christian, in saying that the lien of the mechanic upon an unfinished building is preserved although the contract is never recorded. I have not examined that question, and do not wish to be understood as expressing any opinion upon it. Upon the other points I concur with Judge Christian.
ANDERSON and BOULDIN, Js., concurred in the opinion of Christian, J.
MONCURE, P., dissented, first on the construction given to the term “general contractor;” but second, and especially, on the. ground that a lien is given without limit as to time.
Decree affirmed.